**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW W. MARTIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>F. CHAVEZ, et al.,<br><br>　　　　Defendants. | Case No. 1:11-cv-01461-DLB PC<br><br>**ORDER DISMISSING CERTAIN CLAIMS AND DEFENDANTS**<br><br>ECF No. 10 |

**I.     Background**

　　Plaintiff Andrew W. Martin ("Plaintiff") was a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se in this civil action pursuant to 42 U.S.C. § 1983. On August 31, 2011, Plaintiff filed his Complaint. ECF No. 1. On July 16, 2012, the Court screened Plaintiff's complaint and found that it stated cognizable claims for relief against Defendants Flores, Borges, Miles, and Murphy for violation of the Eighth Amendment, but failed to state any other claims. Plaintiff was provided the opportunity to amend his complaint to cure the deficiencies identified. On September 6, 2012, Plaintiff filed his First Amended Complaint. ECF No. 10.

　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

1

monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." *Id.* § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II.     Summary of First Amended Complaint

Plaintiff was incarcerated at Sierra Conservation Center ("SCC") in Jamestown, California, where the events giving rise to this action occurred. Plaintiff names as Defendants: Warden F. Chavez; correctional sergeant M. Murphy; correctional officers A. Flores, W. Gregg, and E. Borges; medical doctor S. Smith; osteopathic physician and surgeon J. Krpan; registered nurse M. Cope; and Does 1 through 25.

Plaintiff alleges the following. On January 4, 2011, Plaintiff was attacked by another inmate and sustained serious injuries. Plaintiff is a male to female transgender inmate.[1] Defendant Chavez implemented "Rolling Blackouts" at SCC during this time. Rolling Blackouts place a facility on lockdown/modified program. During Rolling Blackouts, responder staff, correctional officers who are trained to respond to emergency situations, are redirected to the other facilities. Responder staff are posted at strategic positions during inmate movement and act as a deterrent to prevent assaults. On January 4, 2011, responder staff were not present at Plaintiff's facility.

At 6:40 p.m., during evening chow, Plaintiff was attacked by inmate Rodriguez. When Plaintiff hit the ground, Plaintiff was semiconscious, unconscious, or in a dazed, confused state. Inmate Rodriguez attacked Plaintiff repeatedly in the facial area, with strikes landing on Plaintiff's

---

[1] The Court will use the masculine pronoun when referring to Plaintiff, as Plaintiff was housed at a men's institution at the time of the incident.

2

eyes and right ear area. Defendant Murphy noticed two inmates on the ground and announced the alarm over the institutional radio system.

Defendant Murphy witnessed Defendant A. Flores utilizing his M. K. 9 pepper spray into the facial area of Plaintiff. Defendant Flores wrote and signed a false report, stating that both inmates were striking each other in the upper torso and facial areas. Plaintiff was at first misclassified for administrative segregation ("ad-seg") status.

Plaintiff had sustained injury to the right ear and was unable to hear from that ear properly. Defendant Gregg was assigned to the facility medical unit that night. Per Defendant Murphy's orders, Defendant Gregg was to decontaminate Plaintiff from the effects of the pepper spray. Defendant Gregg ordered Plaintiff to remove his clothing. Plaintiff had difficulty hearing Defendant Gregg's verbal orders because of the injury to Plaintiff's right ear area. Defendant Gregg ordered Plaintiff to wash the blood from his wounds prior to being seen by licensed vocational nurse Maldando. However, Plaintiff was unaware that he was supposed to decontaminate in the bathroom sink. Plaintiff's injuries were active bleeding, bruised/discolored area, cut/laceration/slash, and swollen areas. Plaintiff had observed prior inmates decontaminated by garden hose to wash an inmate's hair, arms, and legs. Plaintiff was not told to attempt to wash the pepper spray from his hair. Plaintiff suffered from the effects of the pepper spray through the night, and had transferred the pepper spray to his eyes and genitalia. Plaintiff was never properly decontaminated by Defendant Gregg.

Nurse Maldando referred Plaintiff to the SCC Main Medical Facility for further treatment. Defendant Borges took command of the transport, and immediately disliked Plaintiff. Defendant Borges manhandled Plaintiff "like a rag-doll." Defendant Borges used derogatory remarks concerning Plaintiff's sexual orientation while simultaneously yanking and pulling Plaintiff in an unprofessional manner. Plaintiff repeatedly told Defendant Borges that he was having trouble hearing Defendant Borges's verbal commands. Plaintiff was at all times in handcuffs and other mechanical restraints as Defendant Borges dragged and yanked him, and verbally abused him.

After receiving dental x-rays, Defendant Borges escorted Plaintiff to the ad-seg area of the prison infirmary. Plaintiff experienced severe burning of the eyes and genitalia because Plaintiff had

3

transferred pepper spray by his hands and had not been properly decontaminated. On January 5, 2011, Plaintiff was finally allowed to wash off the effects of the pepper spray in the infirmary shower with soap and water, and provided clean clothing.

On January 7, 2011, Plaintiff was seen by the oral surgeon, who reviewed the x-rays and concluded that Plaintiff had a cracked cheek bone. Plaintiff was also seen by Defendant Smith, who treated Plaintiff with eye drops. Plaintiff had complained of lower back pain the tailbone area, loss of balance, and blurred, diminished vision in the right eye. Plaintiff was released from the infirmary and returned to ad-seg.

On January 10, 2011, the captain reviewed the lockup order for Plaintiff and released Plaintiff back to general population. Plaintiff remained in ad-seg until January 16, 2011.

On January 12, 2011, Plaintiff was seen by Defendant Krpan in the ad-seg medical unit. Plaintiff again complained of lower back pain the tailbone area, loss of balance, and blurred, diminished vision in the right eye. Defendant Krpan wrote a false report that the dizziness and visual difficulties had resolved.

On January 7, 2011, when Plaintiff entered ad-seg, all of Plaintiff's Keep On Person ("KOP") medication were taken, pursuant to a policy implemented by Defendant Chavez. On January 16, 2011, upon release from ad-seg, Plaintiff contacted Defendant nurse M. Cope regarding the confiscated KOP medication. Defendant Cope assured that Plaintiff's KOP medication would be returned. On January 20, 2011, after not receiving his medication, Plaintiff submitted a sick call slip, and was again seen by Defendant Cope. Plaintiff informed Defendant Cope that he had still not received the KOP medication. Plaintiff had medication for heartburn, migraine headaches, psoriasis, pain, eye drops, and a thyroid condition. Without the thyroid medication, Plaintiff suffers from shakes or quivers, lack of sleep, odd, funny feelings, uncontrolled hunger pangs, and chipping of fingernails. Plaintiff informed Defendant Cope of his injuries. Defendant Cope assured Plaintiff that she would order the medication right away.

On January 25, 2011, Plaintiff had not received his medication. Plaintiff was examined by nurse Heather, who scheduled Plaintiff to see his primary care physician the next day. Nurse Heather also ordered Plaintiff's thyroid medication, which he received on January 27, 2011.

Doctor Thomatos, Plaintiff's primary care physician, examined Plaintiff, prescribed a medical donut, and lower bunk, lower tier chrono, and ordered a x-ray for Plaintiff's coccyx (tailbone). Doctor Thomatos also referred Plaintiff to see an outside eye clinic. The eye doctor could not determine whether Plaintiff had suffered permanent injury to his right eye. The eye doctor prescribed corrective lenses.

In early February of 2011, Plaintiff submitted another sick call slip, complaining that while housed in the prison infirmary, or the ad-seg unit, he had developed a pain rash and small sores all over his arms and legs. Defendant Cope denied Plaintiff access to see the physician, stating that Plaintiff always had something wrong with his skin. Defendant Cope did not look at Plaintiff's small sores.

On March 1, 2011, the sores and rash became worse, and Plaintiff submitted another sick call slip. Plaintiff was again seen by Defendant Cope, who looked at the rash and sores and exclaimed that Plaintiff had staphylococcus. Plaintiff was finally seen by Dr. Thomatos on March 7, 2011, who started Plaintiff on a strong antibiotic treatment.

Plaintiff alleges a violation of the First, Fourth, Eighth, and Fourteenth Amendments. Plaintiff requests as relief declaratory judgment, and monetary damages.[2]

### III. Analysis

Plaintiff lists fourteen causes of action, which the Court will address below.[3]

### A. First Cause of Action

Plaintiff contends that Defendant Chavez violated Plaintiff's Eighth Amendment right to personal safety in prison by implementing Rolling Blackouts. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d

---

[2] Plaintiff also requested injunctive relief. Plaintiff is now incarcerated at Valley State Prison in Chowchilla, California, and has not demonstrated the likelihood of return to SCC. Accordingly, this request is dismissed as moot. *Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

[3] Plaintiff's fifteenth "cause of action" is a request for compensatory and punitive damages, which is not an independent claim for relief.

Plaintiff makes no allegations against Defendant Does 1 through 25. Accordingly, they are dismissed from this action.

5

1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Id.* at 835.

Plaintiff fails to state a claim against Defendant Chavez. Plaintiff fails to allege facts which demonstrate that Defendant Chavez knew of and disregarded an excessive risk of serious harm to Plaintiff's safety. Plaintiff's allegations demonstrate that there were less available prison staff during chow hall on the date of the incident, but Plaintiff has not alleged facts demonstrating that there was an excessive risk of serious harm resulting from less staff.

### B.     Second Cause of Action

Plaintiff contends that Defendant Chavez violated Plaintiff's Eighth Amendment right to personal safety in prison by implementing failing to disinfect MRSA staph infection in either the prison infirmary or ad seg unit during January 2011.

Plaintiff fails to state a claim against Defendant Chavez. Plaintiff fails to allege facts which demonstrate that Defendant Chavez knew of and disregarded an excessive risk of serious harm to Plaintiff's health. Plaintiff has not alleged facts which indicate that Defendant Chavez knew of the existence of MRSA in either the prison infirmary or the ad seg unit.

### C. Third Cause of Action

Plaintiff contends deliberate indifference against Defendant Chavez for the deprivation of his KOP medication when he was moved to ad seg.[4]

Plaintiff fails to state an Eighth Amendment claim against Defendant Chavez. Plaintiff has not alleged facts which demonstrate that Defendant Chavez knew of and disregarded an excessive risk of serious harm to Plaintiff's health through the alleged implementation of this policy.

### D. Fourth Cause of Action

Plaintiff contends an Eighth Amendment violation against Defendant Murphy for failing to intervene to protect Plaintiff from Defendant Flores as he pepper sprayed Plaintiff.

Plaintiff fails to state an Eighth Amendment claim against Defendant Murphy. Plaintiff has not alleged facts which demonstrate that Defendant Murphy knew of and disregarded an excessive risk of serious harm to Plaintiff's health or safety. Plaintiff has not alleged facts which demonstrate that Defendant Murphy had the opportunity to intervene. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

### E. Fifth Cause of Action

Plaintiff contends an Eighth Amendment violation against Defendant Murphy when he allowed Plaintiff to be attacked by another inmate while the facility was under modified program/lockdown conditions. Plaintiff contends that Defendant Murphy should not have permitted over 400 inmates to attend evening chow under these Rolling Blackout conditions.

Plaintiff fails to state a claim against Defendant Murphy. Plaintiff fails to allege facts which demonstrate that Defendant Murphy knew of and disregarded an excessive risk of serious harm to Plaintiff's safety. Plaintiff's allegations demonstrate that there were less available prison staff during chow hall on the date of the incident, but Plaintiff has not alleged facts demonstrating that there was an excessive risk of serious harm resulting from less staff.

### F. Sixth Cause of Action

Plaintiff contends a violation against Defendant Murphy for writing a Rules Violation Report

---

[4] Plaintiff refers to the violation as both a due process claim and a deliberate indifference claim. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted). Thus, Plaintiff's due process claim will be dismissed in light of the applicability of the Eighth Amendment.

that claimed Plaintiff was fighting, though it also listed Plaintiff as the victim in an assault. This led to Plaintiff's placement in ad seg. The Court construes the claim as one for due process.

With respect to placement in ad seg, due process requires only that prison officials "hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated," that prison officials "inform the prisoner of the charges against [him] or the reasons for considering segregation," and that the prisoner be allowed "to present his views." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986). Prisoners are not entitled to "detailed written notice of charges, representation by counsel or counsel substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.* Further, "due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation." *Id.*

Nonetheless, a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under section 1983. *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984); *see Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974) (setting forth required procedural protections at prison disciplinary hearings).

Plaintiff fails to state a claim. Plaintiff alleges no facts which demonstrate a violation of Plaintiff's due process rights.

**G.     Seventh Cause of Action**

Plaintiff alleges that Defendant Flores used excessive force against him by spraying Plaintiff with O.C. pepper spray when he was either dazed and confused, or semiconscious after being attacked by another inmate.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* (internal quotation marks and

8

citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendant A. Flores for excessive force.

### H.     Eighth Cause of Action

Plaintiff contends a violation against Defendant A. Flores for writing a Rules Violation Report that claimed Plaintiff was Fighting, Resulting with Battery and Use of Force, despite Plaintiff also being found to be the victim, which led to Plaintiff's placement in ad seg. The Court construes the claim as one for violation of due process.

Plaintiff fails to state a claim. Plaintiff alleges no facts which demonstrate a violation of Plaintiff's due process rights.

**I.      Ninth Cause of Action**

Plaintiff contends a violation against Defendant Gregg for failing to decontaminate Plaintiff from the effects of O.C. pepper spray.

Plaintiff fails to state an Eighth Amendment claim against Defendant Gregg.  Plaintiff does not allege facts which indicate that Defendant Gregg knew of and disregarded an excessive risk of serious harm to Plaintiff's health.  Plaintiff alleges no facts which indicate that he knew Plaintiff had not properly decontaminated himself.   Plaintiff concedes that his face may have been decontaminated, which is consistent with Defendant Gregg's CDCR 837-C report.  Plaintiff has not alleged facts which indicate that Defendant Gregg was required to insure Plaintiff had been "properly decontaminated."

**J.      Tenth Cause of Action**

Plaintiff contends an Eighth Amendment violation against Defendant E. Borges for physically manhandling Plaintiff like a ragdoll while he was shackled in handcuffs.  Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendant E. Borges for excessive force.

**K.      Eleventh Cause of Action**

Plaintiff contends that Defendant Smith acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.  Plaintiff contends that Defendant Smith was aware that Plaintiff had serious injuries, including exposure to pepper spray and a bleeding right eye.  Plaintiff also complained of blurred vision in his right eye, loss of balance, and severe tailbone pain.  Defendant Smith prescribed eye over-the-counter eye drops.

Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendant Smith for deliberate indifference to a serious medical need.

**L.      Twelfth Cause of Action**

Plaintiff contends that Defendant Krpan acted with deliberate indifference to Plaintiff's serious medical need. Plaintiff alleges that Defendant Krpan was aware that Plaintiff received x-rays to his cheekbone for a fracture, and that on January 12, 2011, Plaintiff had complained of blurry vision in his right eye, loss of balance, and severe coccyx pain.  Defendant Krpan told Plaintiff to take the matter up with his primary care physician when he was released from ad seg.  Plaintiff was

not seen by an outside eye doctor until January 27, 2011.

Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendant Krpan for deliberate indifference to a serious medical need.

### M. Thirteenth Cause of Action

Plaintiff contends that Defendant M. Cope acted with deliberate indifference to Plaintiff's serious medical need. Plaintiff alleges that Defendant Cope was aware that Plaintiff's KOP medication had been confiscated. On January 20, 2011, Defendant Cope interviewed Plaintiff regarding his sick call slips, and informed Plaintiff that she would call the pharmacy and schedule Plaintiff to see his primary physician. Plaintiff did not immediately receive his medication. Plaintiff eventually was seen again on January 25, 2011, by another nurse, who reordered Plaintiff's medication.

Plaintiff fails to state an Eighth Amendment claim against Defendant Cope regarding his KOP medication. Defendant Cope stated that she would call the pharmacy and did schedule Plaintiff to see his physician. The delay that Plaintiff allegedly received does not demonstrate that Defendant Cope acted with deliberate indifference regarding his medication.

### N. Fourteenth Cause of Action

Plaintiff contends that Defendant M. Cope acted with deliberate indifference to Plaintiff's serious medical need. Plaintiff alleges that he informed Defendant Cope of a painful rash in early February 2011. Defendant Cope denied access to see a primary care physician, stating that there was always something wrong with Plaintiff's skin. On March 1, 2011, when the rash worsened, Plaintiff again was examined by Defendant Cope, who exclaimed that Plaintiff had staphylococcus.

Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendant Cope for deliberate indifference to a serious medical need regarding Plaintiff's rash.

## IV. Conclusion and Order

Based on the foregoing, it is HEREBY ORDERED that:

1. This action proceeds against Defendant A. Flores and E. Borges for excessive force in violation of the Eighth Amendment, and against Defendants Smith, Krpan, and Cope for deliberate indifference to a serious medical need in violation of the Eighth Amendment,

as stated herein; and

2. Defendants Chavez, Murphy, Gregg, and Does 1 through 25 are dismissed with prejudice for failure to state a claim.

IT IS SO ORDERED.

Dated: __**March 11, 2013**__                    /s/ *Dennis L. Beck*
                                                                     UNITED STATES MAGISTRATE JUDGE