1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                          EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10   ANDREW W. MARTIN, | Case No. 1:11-cv-01461-AWI-DLB PC |
| 11               Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE GRANTED** |
| 12        v. | |
| 13   F. CHAVEZ, et al., | (ECF No. 24) |
| 14               Defendants. | THIRTY-DAY DEADLINE |

15

16   **I.    Background**

17        Plaintiff Andrew W. Martin ("Plaintiff") is a prisoner in the custody of the California

18   Department of Corrections and Rehabilitation ("CDCR").   Plaintiff is proceeding pro se and in

19   forma pauperis in this civil action pursuant to 42 U.S.C. § 1983.   This action is proceeding on

20   Plaintiff's First Amended Complaint, filed September 6, 2012, against Defendants A. Flores and E.

21   Borges for excessive force in violation of the Eighth Amendment, and against Defendants Smith,

22   Krpan, and Cope for deliberate indifference to a serious medical need, in violation of the Eighth

23   Amendment.   ECF No. 10.   Pending before the Court is Defendant Borges' and Defendant Cope's

24   Motion to Dismiss, filed June 17, 2013, pursuant to the unenumerated portion of Rule 12(b) of the

25   Federal Rules of Civil Procedure, for Plaintiff's failure to exhaust administrative remedies.[1]   ECF

26   No. 24.   Plaintiff filed an Opposition on July 19, 2013.   ECF No. 33.   On July 29, 2013, Defendants

27

28   _____
     [1] Defendant's motion to dismiss for failure to exhaust administrative remedies was served with a concurrent notice pursuant to *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), as required by the recent holding in *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012).

1    filed a Reply.  ECF No. 36.  The matter is submitted pursuant to Local Rule 230(*l*).

2    **II.    <u>Summary of Complaint</u>**

3            Plaintiff was incarcerated at Sierra Conservation Center ("SCC") in Jamestown, California,

4    where the events giving rise to this action occurred.  Plaintiff names as Defendants: Warden F.

5    Chavez; correctional sergeant M. Murphy; correctional officers A. Flores, W. Gregg, and E. Borges;

6    medical doctor S. Smith; osteopathic physician and surgeon J. Krpan; registered nurse M. Cope; and

7

8    Does 1 through 25.

9            Plaintiff alleges the following.  On January 4, 2011, Plaintiff was attacked by another inmate

10   and sustained serious injuries.  Plaintiff is a male to female transgender inmate.[2]  Defendant Chavez

11   implemented "Rolling Blackouts" at SCC during this time.  Rolling Blackouts place a facility on

12   lockdown/modified program.  During Rolling Blackouts, responder staff, correctional officers who

13   are trained to respond to emergency situations, are redirected to the other facilities. Responder staff

14   are posted at strategic positions during inmate movement and act as a deterrent to prevent assaults.

15
     On January 4, 2011, responder staff were not present at Plaintiff's facility.
16

17           At 6:40 p.m., during evening chow, Plaintiff was attacked by inmate Rodriguez.  When

18   Plaintiff hit the ground, Plaintiff was semiconscious, unconscious, or in a dazed, confused state.

19   Inmate Rodriguez attacked Plaintiff repeatedly in the facial area, with strikes landing on Plaintiff's

20
     eyes and right ear area.  Defendant Murphy noticed two inmates on the ground and announced the
21
     alarm over the institutional radio system.
22

23           Defendant Murphy witnessed Defendant A. Flores utilizing his M. K. 9 pepper spray into the

24   facial area of Plaintiff.  Defendant Flores wrote and signed a false report, stating that both inmates

25   were striking each other in the upper torso and facial areas.  Plaintiff was at first misclassified for

26   administrative segregation ("ad-seg") status.

27

28   ────────────────────
             [2] The Court will use the feminine pronoun when referring to Plaintiff, as Plaintiff previously requested.  ECF
     No. 17.

Plaintiff had sustained injury to the right ear and was unable to hear from that ear properly. Defendant Gregg was assigned to the facility medical unit that night.  Per Defendant Murphy's orders, Defendant Gregg was to decontaminate Plaintiff from the effects of the pepper spray. Defendant Gregg ordered Plaintiff to remove her clothing.  Plaintiff had difficulty hearing Defendant Gregg's verbal orders because of the injury to Plaintiff's right ear area.  Defendant Gregg ordered Plaintiff to wash the blood from her wounds prior to being seen by licensed vocational nurse Maldando.  However, Plaintiff was unaware that she was supposed to decontaminate in the bathroom sink.  Plaintiff's injuries were active bleeding, bruised/discolored area, cut/laceration/slash, and swollen areas.  Plaintiff had observed prior inmates decontaminated by garden hose to wash an inmate's hair, arms, and legs.  Plaintiff was not told to attempt to wash the pepper spray from her hair.  Plaintiff suffered from the effects of the pepper spray through the night, and had transferred the pepper spray to her eyes and genitalia.  Plaintiff was never properly decontaminated by Defendant Gregg.

Nurse Maldando referred Plaintiff to the SCC Main Medical Facility for further treatment. Defendant Borges took command of the transport, and immediately disliked Plaintiff.  Defendant Borges manhandled Plaintiff "like a rag-doll."  Defendant Borges used derogatory remarks concerning Plaintiff's sexual orientation while simultaneously yanking and pulling Plaintiff in an unprofessional manner.  Plaintiff repeatedly told Defendant Borges that she was having trouble hearing Defendant Borges's verbal commands.  Plaintiff was at all times in handcuffs and other mechanical restraints as Defendant Borges dragged and yanked him, and verbally abused him. After receiving dental x-rays, Defendant Borges escorted Plaintiff to the ad-seg area of the prison infirmary.  Plaintiff experienced severe burning of the eyes and genitalia because Plaintiff had transferred pepper spray by her hands and had not been properly decontaminated.  On January 5, 2011, Plaintiff was finally allowed to wash off the effects of the pepper spray in the infirmary shower with soap and water, and provided clean clothing.

On January 7, 2011, Plaintiff was seen by the oral surgeon, who reviewed the x-rays and concluded that Plaintiff had a cracked cheek bone.  Plaintiff was also seen by Defendant Smith, who treated Plaintiff with eye drops.  Plaintiff had complained of lower back pain the tailbone area, loss of balance, and blurred, diminished vision in the right eye.  Plaintiff was released from the infirmary and returned to ad-seg.

On January 10, 2011, the captain reviewed the lockup order for Plaintiff and released Plaintiff back to general population.  Plaintiff remained in ad-seg until January 16, 2011.  On January 12, 2011, Plaintiff was seen by Defendant Krpan in the ad-seg medical unit.  Plaintiff again complained of lower back pain the tailbone area, loss of balance, and blurred, diminished vision in the right eye.  Defendant Krpan wrote a false report that the dizziness and visual difficulties had resolved.

On January 7, 2011, when Plaintiff entered ad-seg, all of Plaintiff's Keep On Person ("KOP") medication were taken, pursuant to a policy implemented by Defendant Chavez.  On January 16, 2011, upon release from ad-seg, Plaintiff contacted Defendant nurse M. Cope regarding the confiscated KOP medication.  Defendant Cope assured that Plaintiff's KOP medication would be returned.  On January 20, 2011, after not receiving her medication, Plaintiff submitted a sick call slip, and was again seen by Defendant Cope.  Plaintiff informed Defendant Cope that she had still not received the KOP medication.  Plaintiff had medication for heartburn, migraine headaches, psoriasis, pain, eye drops, and a thyroid condition.  Without the thyroid medication, Plaintiff suffers from shakes or quivers, lack of sleep, odd, funny feelings, uncontrolled hunger pangs, and chipping of fingernails.  Plaintiff informed Defendant Cope of her injuries.  Defendant Cope assured Plaintiff that she would order the medication right away.

On January 25, 2011, Plaintiff had not received her medication.  Plaintiff was examined by nurse Heather, who scheduled Plaintiff to see her primary care physician the next day.  Nurse Heather also ordered Plaintiff's thyroid medication, which she received on January 27, 2011.

Doctor Thomatos, Plaintiff's primary care physician, examined Plaintiff, prescribed a medical donut, and lower bunk, lower tier chrono, and ordered a x-ray for Plaintiff's coccyx (tailbone).  Doctor Thomatos also referred Plaintiff to see an outside eye clinic.  The eye doctor could not determine whether Plaintiff had suffered permanent injury to her right eye.  The eye doctor prescribed corrective lenses.

In early February of 2011, Plaintiff submitted another sick call slip, complaining that while housed in the prison infirmary, or the ad-seg unit, she had developed a pain rash and small sores all over her arms and legs.  Defendant Cope denied Plaintiff access to see the physician, stating that Plaintiff always had something wrong with her skin.  Defendant Cope did not look at Plaintiff's small sores.

On March 1, 2011, the sores and rash became worse, and Plaintiff submitted another sick call slip.  Plaintiff was again seen by Defendant Cope, who looked at the rash and sores and exclaimed that Plaintiff had staphylococcus.  Plaintiff was finally seen by Dr. Thomatos on March 7, 2011, who started Plaintiff on a strong antibiotic treatment.

Plaintiff alleges a violation of the First, Fourth, Eighth, and Fourteenth Amendments.  Plaintiff requests as relief declaratory judgment, and monetary damages.[3]

## III.  Exhaustion of Administrative Remedies

### A.  Legal Standard

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam).  Exhaustion is required regardless of

---

[3] Plaintiff also requested injunctive relief.  Plaintiff is now incarcerated at Valley State Prison in Chowchilla, California, and has not demonstrated the likelihood of return to SCC.  Accordingly, this request was dismissed as moot. *Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002).

The PLRA does not require that Plaintiff include legal theories or every fact necessary to prove each element of an eventual legal claim. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). But an inmate appeal must provide enough information to allow prison officials to take appropriate responsive measures. *Id.* at 1121. This ensures a grievance serves its primary purpose of notifying the prison of a problem. *See Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt*, 315 F.3d at 1119.  The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion.  *Wyatt*, 315 F.3d at 1119 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1998) (per curiam)).  In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.  *Id.*

### B.   <u>Analysis</u>

The CDCR has an administrative grievance system for prisoner complaints.  Cal. Code Regs. tit. 15, § 3084.1 (2010).  At the time of the events in question, the process was initiated by submitting a CDC Form 602.  *Id.* § 3084.2(a).  Four levels of appeal were involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level."  *Id.* § 3084.5.  Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level.  *Id.* §§ 3084.5, 3084.6(c).  In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *McKinney*, 311 F.3d at 1199-1201.

1    Exhaustion does not always require pursuit of an appeal through the Director's Level of Review.

2    What is required to satisfy exhaustion is a fact specific inquiry, and may be dependent upon prison

3    officials' response to the appeal.  *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (improper

4    reasons for screening inmate's appeal is equitable exception to exhaustion); *Nunez v. Duncan*, 591

5    F.3d 1217, 1224 (9th Cir. 2010) (listing examples of exceptions to exhaustion requirement from

6    other circuits); *Brown v. Valoff*, 422 F.3d 926, 935-36 (9th Cir. 2005) ("[E]ntirely pointless

7    exhaustion" not required).

8         Defendants contend that Plaintiff has failed to exhaust administrative remedies against

9    Defendants Borges and Cope in this action.  Defendants contend that although Plaintiff submitted

10   various appeals that were exhausted, the appeals did not concern Defendant Borges' or Defendant

11   Cope's alleged misconduct.   Defendant submits, as exhibits in support, declarations from M.

12   Baldwin, Appeals Coordinator for CDCR at SCC, J. Lozano, Chief of the Office of Appeals for

13   CDCR in Sacramento, California, S. Stewart, Healthcare Appeals Coordinator at SCC, and L.

14   Zamora, Chief Inmate Correspondence and Appeals Branch in Elk Grove, California. Baldwin's

15   declaration indicates that Plaintiff did not file any appeal as to Plaintiff's claim that Defendant

16   Borges physically manhandled Plaintiff during medical transport on or around January 4, 2011.

17   Baldwin Decl. ¶ 10.  Lozano's declaration indicates that Plaintiff did not file any inmate appeal for

18   review at the third level concerning Plaintiff's allegations against Defendant Borges or anyone

19   "manhandling" Plaintiff "like a ragdoll."  Lozano Decl. ¶ 8.  Stewart's and Zamora's declarations

20   indicate that Plaintiff never filed an appeal regarding Plaintiff's allegations against Defendant Cope.

21   Plaintiff did file appeal No. SCC-20-11-10103, concerning Plaintiff's medical issues from January 4,

22   2011 to January 27, 2011.  However, Plaintiff never submitted any appeals regarding a complaint for

23   Defendant Cope's failure to treat a rash in February 2011.  Steward Decl. ¶ ¶ 5-6; Zamora Decl. ¶ ¶

24   7-8.  There is no record of an inmate grievance properly filed regarding Defendants Borges and

25   Cope's alleged acts while Plaintiff was incarcerated at SCC.  Defendants have met their initial

26   burden of persuasion.  Thus, the burden thus shifts to Plaintiff to demonstrate exhaustion of all

27   available administrative remedies.

28   *///*

### 1.    Defendant Borges

Plaintiff contends that her exhausted appeals did include the same allegations against Defendant Borges as her current complaint before the Court.  Although Plaintiff was unable to specifically identify Defendant Borges by name at the time of the initial appeal, Plaintiff described him to the best of her ability.  Pl's Opp. at 2; ECF No. 33.  Plaintiff submits appeal No. SCC-11-10103, which states: "On 1/4/11, appellant [Plaintiff] received dental x-rays.  He was escorted by custody staff Eason (male black) and big white guy with a name beginning 'B'.  Appellant complained she couldn't hear, head was ringing." Pl's Exh. A; ECF No. 33 at 11.  Additionally, Plaintiff submits appeal No. SCC-11-00109, which states: "Due to the Ad-Seg placement appellant [Plaintiff] was treated by custody staff like a common thug, being handcuffed behind his [her] back, during medical treatments such as X-rays, dental treatment, and the like."  Pl's Exh. B; ECF No. 33 at 16.  Plaintiff contends that both these appeals describe the alleged actions of Defendant Borges in this action, and thus satisfies the exhaustion requirement.

Here, the issue is whether Plaintiff provided enough information in her appeals to allow prison officials to take appropriate responsive measures against Defendant Borges.  *See Griffin*, 557 F.3d at 1121.  Plaintiff was not required in her appeal to identify responsible parties or otherwise signal who may ultimately be sued.  Sapp, 623 F.3d at 824.  The relevant prison regulation only required Plaintiff to describe the problem, which, with respect to her excessive force claim, was that Defendant Borges manhandled Plaintiff during a medical transport.  *See Sapp*, 623 F.3d at 824 (citing *Griffin*, 557 F.3d at 1120) (quotation marks omitted); *Akhtar*, 698 F.3d at 1211; *cf. McCollum v. Cal. Dept of Corr. & Rehab.,* 647 F.3d 870, 876 (9th Cir. 2011) (while inmates grievances provided notice the failure to provide for certain general Wiccan religious needs and free exercise, they were not sufficient to place prison on notice that the chaplaincy-hiring program itself was the problem); *Morton*, 599 F.3d at 946 (appeal grieving prisons decision to deny visitation with minors did not place prison on notice of the plaintiffs claim that staff conduct contributed to a prior assault on him by inmates).

Plaintiff's complaint alleges that while being transported to the Main Medical Facility, Defendant Borges met the transportation vehicle at the Main Facility side-door. ECF No. 10 at 17.

1    Plaintiff alleges that Defendant Borges instantly took a disliking to Plaintiff, used derogatory

2    remarks concerning Plaintiff's sexual orientation while yanking and pulling Plaintiff around in an

3    unprofessional manner. ECF No. 10, at 4, 17. Plaintiff alleges that Plaintiff was in mechanical

4    restraints including handcuffs and possibly still had waist-chains on. ECF No. 10, at 4. Plaintiff

5    alleges that Defendant Borges physically manhandled Plaintiff like a ragdoll while Plaintiff was

6    shackled in handcuffs. ECF No. 10 at 4.

7           The Court finds that Plaintiff's appeals did not provide sufficient information to notify the

8    prison of the alleged complaints against Defendants Borges.  The Court's findings focus on the lack

9    of factual similarities between Plaintiff's appeals and the allegations against Defendant Borges in the

10   current action.[4] In regards to Plaintiff's appeal No. SCC-20-11-10103, Plaintiff identified Defendant

11   Borges by her description "big white guy with a name beginning with B" and by reference to "the

12   medical officer at the prison infirmary on the night of alleged incident," but Plaintiff does not tie this

13   individual to or in any way raise similar facts surrounding her allegation that Defendant Borges

14   manhandled Plaintiff. Thus, appeal SCC-20-11-10103 could not have put prison officials on notice

15   of the issue Plaintiff now alleges against Defendant Borges in her complaint. Next, in regards to

16   Plaintiff's appeal No. SCC-X-11-001019, the language "appellant was treated by custody staff like a

17   common thug, being handcuffed behind his [her] back during medical treatments such as x-rays,

18   dental treatment…" does not describe the allegations in Plaintiff's complaint.  Accordingly, the

19   Court finds that Plaintiff did not exhaust her administrative appeals against Defendant Borges and

20   will recommend that he be dismissed from this action.

21          **2.     Defendant Cope**

22          Plaintiff contends that her exhausted appeals included the same allegations against Defendant

23   Cope as in the current complaint before the Court..  Plaintiff did not specifically name Defendant

24   Cope in her appeals because in January of 2011, Defendant Cope had the last name Miles.  Plaintiff

25   contends that M. Miles was listed in appeal No. SCC-20-11-10103 five different times.  Pl's Opp. at

26   4; ECF No. 33.  Plaintiff submits appeal No. SCC-11-10103, which shows that Plaintiff complained

27

28   ---
     [4] The fact that Plaintiff was not able to identify Defendant Borges specifically by name in the appeals is not
     determinative in this case.  Plaintiff's descriptions of a big white guy with a name stating "B" would have been sufficient
     had Plaintiff raised similar facts surrounding his allegations in the current complaint.

of "numerous abrasions, scratches, bruises, discolored areas, cuts, lacerations" that eventually led to her staph infection.  Pl's Exh. A; ECF No. 33 at 9.  Plaintiff argues that these injuries eventually led to her rash and staph infection, which Defendant Cope failed to treat her for.  Pl's Opp. at 4-5. Plaintiff's appeal also shows that she complained of M. Miles' failure to provide Plaintiff with is KOP medication on January 20, 2011.

Plaintiff's deliberate indifference claim against Defendant Cope is proceeding only for Defendant Cope's failure to treat Plaintiff's skin rash.[5]  ECF No. 13 at 11.  Plaintiff's complaint alleges that Plaintiff alleges that she informed Defendant Cope of a painful rash in early February 2011.  ECF No. 10 at 61.   Defendant Cope denied access to see a primary care physician, stating that there was always something wrong with Plaintiff's skin. *Id.*  On March 1, 2011, when the rash worsened, Plaintiff again was examined by Defendant Cope, who exclaimed that Plaintiff had staphylococcus. *Id.*

The Court finds that Plaintiff did not exhaust her appeals regarding the allegations of Defendant Cope's failure to treat Plaintiff's skin rash.  Plaintiff correctly notes that Defendant Cope (formerly M. Miles) was mentioned various times in appeal No. SCC-20-11-10103, however, at no point did Plaintiff's appeal complain of Defendant Cope's failure to treat a skin rash.  Plaintiff's appeal complains of Defendant Cope's failure to provide Plaintiff with her KOP medication from about January 16, 2011 to January 25, 2011.   However, Plaintiff's complaint alleges failure to treat Plaintiff's rash in early February of 2011. Accordingly, the Court finds that Plaintiff did not exhaust her administrative appeals against Defendant Cope and will recommend that she be dismissed from this action.

**IV.**   **Conclusion and Recommendation**

Defendants have demonstrated that Plaintiff has failed to exhaust available administrative remedies against Defendants Borges and Cope as required by the PLRA.   Accordingly, the undersigned recommends dismissal of Defendants Borges and Cope form this action, without prejudice. *Wyatt*, 315 F.3d at 1120.

///

---

[5] The Court previously dismissed Plaintiff's claims against Defendant Cope for failure to provide Plaintiff with her KOP medication.  ECF No. 13 at 11.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' Motion to Dismiss, filed June 17, 2013, pursuant to the unenumerated portion of Rule 12(b) of the Federal Rules of Civil Procedure, should be granted; and

2. Defendants Borges and Cope be dismissed from this action, without prejudice, for Plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __**December 17, 2013**__          _____ /s/ *Dennis L. Beck*
                                            UNITED STATES MAGISTRATE JUDGE